**SHAKED LAW GROUP, P.C.**
Dan Shaked, Esq.
14 Harwood Court, Suite 415
Scarsdale, NY 10583
Tel. (917) 373-9128
Email: ShakedLawGroup@gmail.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

PARADISE MORGAN,

                              Plaintiff,                Case No. 23-cv-434

           - against -

LULULEMON ATHLETICA INC.,                   **COMPLAINT**

                              Defendant.
----------------------------------------------------------X

## <u>INTRODUCTION</u>

1. Plaintiff, Paradise Morgan ("<u>Plaintiff</u>" or "<u>Morgan</u>"), brings this action on behalf of herself against Lululemon Athletica Inc. (hereinafter "<u>Lululemon</u>" or "<u>Defendant</u>"), and states as follows:

2. Plaintiff is a visually-impaired and legally blind person who requires the use of her smartphone and its text-to-voice features to access QR Codes and read product labels and packaging information on store merchandise. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision; others have no vision.

3. Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind, and according to

the American Foundation for the Blind's 2015 report, approximately 400,000 visually impaired persons live in the State of New York.

4. Plaintiff brings this civil rights action against Lululemon for their failure to design, construct, and maintain, the merchandise sold at Lululemon stores with tags and labels which are fully accessible to and independently usable by Plaintiff and other blind or visually-impaired persons.  Defendant is denying blind and visually-impaired persons throughout the United States with equal access to the goods, services, and information Lululemon provides to their non-disabled customers through its failure to provide digital labels, including QR Codes on its product tags and labels.  Defendant's denial of full and equal access to its tags and labels, and therefore denial of its products and services offered, and in conjunction with its physical locations, is a violation of Plaintiff's rights under the Americans with Disabilities Act (the "ADA").

5. Plaintiff resides near several Lululemon stores and regularly visits the stores to browse and/or make purchases. Plaintiff is also an advocate of the rights of similarly situated persons and is a "tester" for the purpose of asserting her civil rights and monitoring, ensuring, and determining whether places of public accommodation are in compliance with the ADA.

6. Lululemon provides to the public a wide array of goods and necessities including a wide range of apparel, footwear, accessories, bags, yoga mats, and quipment for all seasons and all occasions which are sold at over 600 company-owned stores.  Each product sold at Lululemon contains permanent labels listing the size of the item, the material it is made of, the country of origin, and washing and care instructions. Yet, the lack of these labels and tags being in digital form creates access barriers that make it impossible for blind and visually-impaired customers to learn the information contained in the labels.  In fact, the access barriers make it impossible for blind and visually-impaired users to know the material, country of origin, and care instructions of

each and every item and therefore, impossible to make an informed decision as to whether to purchase the product and how to take care of the product *after* purchase.  Thus, Lululemon excludes the blind and visually-impaired from the full and equal participation in the economy that is a fundamental part of the common marketplace and daily living.  In the wave of technological advances in recent years, digital labels, including QR Codes, are becoming an increasingly prominent part of everyday life, allowing blind and visually-impaired persons to fully and independently access a variety of products and services.

7. The lack of accessible product tags and labels means that blind people are excluded from experiencing transacting with defendant's stores and from purchasing goods or services at defendant's stores.

8. Despite readily available accessible technology, such as the technology in use at other heavily trafficked retail stores, which make use of digital labels, tags, and packaging utilizing QR Codes which can be scanned into a smartphone and converted to verbal description, Defendant has chosen to rely on an exclusively visual interface.  Lululemon's sighted customers can independently browse, select, and learn about the size, material, country of origin, and care instructions of every product sold at a Lululemon store, and buy without the assistance of others. Lululemon's sighted customers can also know how to wash and care for the items purchased at Lululemon store in the *future* by referring to the label. However, blind persons must rely on sighted companions to assist them in accessing and purchasing at a Lululemon store and must rely on other people to assist with wash and care instructions *after* they leave the store.

9. By failing to make the labels accessible to blind persons and by failing to provide adequate auxiliary aids, Defendant is violating basic equal access requirements under city, state and federal law.

3

10. Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by public accommodations that are inaccessible to blind and visually impaired persons. Similarly, New York State and New York City laws require places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

11. Plaintiff visited Lululemon stores in Manhattan, including the stores at 3rd Avenue and 86th Street and the store in Soho Broadway, amongst other Lululemon stores visited in November and December 2022 in order to purchase clothing including leggings, shirts, and hoodies. Specifically, Plaintiff was interested in purchasing the Wunder Train High-Rise Tight leggings, the Scuba Oversized Half-Zip Hoodie, and the Classic-Fit Cotton-Blend T-Shirt. Defendant has always been interested in making purchases at Lululemon stores, but is concerned that she will not know how to properly wash and care for the items purchased. Unless Defendant remedies the numerous access barriers on its tags and labels, Plaintiff and other blind persons will continue to be unable to independently navigate, browse, use, and complete a transaction at a Lululemon store and take care of Lululemon merchandise *after* purchase.

12. Because Defendant's store is not equally accessible to blind and visually-impaired consumers, it violates the ADA. Plaintiff seeks a permanent injunction to cause a change in Lululemon's policies, practices, and procedures so that the tags and labels on Defendant's products will become and remain accessible to blind consumers. This complaint also seeks compensatory damages to compensate Plaintiff for having been subjected to unlawful discrimination.

13. In the past few years there have been hundreds of ADA cases filed by blind persons around the country arguing that failure to provide gift cards in Braille violates the ADA. Plaintiffs lost these cases every step of the way and the Second Circuit has even chimed in on these cases.[1] As will be shown in this Complaint, the similarities between gift cards and product labels are non-existent and any comparison of the two would be a red herring.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181 *et seq.*, and 28 U.S.C. § 1332, and the amount in controversy exceeds the sum or value of $75,000, excluding interest and costs.  See 28 U.S.C. § 1332(a).

15. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, over Plaintiff's pendent claims under the New York State Human Rights Law, N.Y. Exec. Law, Article 15 (Executive Law § 290 *et seq.*) and the New York City Human Rights Law, N.Y.C. Administrative Code § 8-101 *et seq*. ("City Law").

16. Venue is proper in this District of New York pursuant to 28 U.S.C. §§ 1391(b)-(c) and 144(a) because Plaintiff resides in this District, Defendant conducts and continues to conduct a substantial and significant amount of business in this District, and a substantial portion of the conduct complained of herein occurred in this District.

17. Defendant is registered to do business in New York State and has been conducting business in New York State, including in this District.  Defendant maintains Brick-and-mortar places of accommodation in this District which are subject to personal jurisdiction in

---

[1] *See Calcano v. Swarovski North America Ltd*., 36 F.4th 68 (2nd Cir. June 2, 2022). The Court in *Swarovski* dismissed five separate lawsuits primarily because Plaintiff failed to allege an "intent to return." The Court, albeit briefly, agreed with the district courts' decisions that Plaintiff's failed to state a claim under the ADA.

this District.  Defendant also has been and is committing the acts alleged herein in this District and has been and is violating the rights of consumers in this District and has been and is causing injury to consumers in this District.  A substantial part of the act and omissions giving rise to Plaintiff's claims have occurred in this District.

## **PARTIES**

18. Plaintiff, is and has been at all relevant times a resident of New York County, State of New York.

19. Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(l)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., the New York State Human Rights Law and the New York City Human Rights Law. Plaintiff, has been denied the full enjoyment of the facilities, goods and services of Defendant's brick and mortar locations, as a result of accessibility barriers.

20. Defendant, Lululemon Athletica Inc., is a Delaware Foreign Business Corporation doing business in this District with its principal place of business located in Vancouver, British Columbia.

21. Defendant owns and operates Lululemon Stores (hereinafter, "Lululemon Stores" or "Stores"), which are a place of public accommodation.  Lululemon Stores are located in New York State and in this district.

22. Lululemon Stores provide to the public important goods and services including athletic apparel, footwear, and accessories, and bags, yoga mats, and equipment, amongst the many items sold at the Stores. Each and every product that is available for sale at the Lululemon Store contains informative labels and tags which include information about the size, price, material, country of origin, and care instructions of the product. The inaccessibility of

the labels and tags at the store or after the time of purchase has deterred Plaintiff from making purchases at Defendant's stores.

23. Defendant's locations are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). The labels attached to each item sold at Lululemon are intertwined with the merchandise available for sale. Just like a store with narrow aisles that cannot accommodate a wheelchair, the lack of digital labels make it impossible for blind persons to browse and make purchases at Lululemon Stores.

## NATURE OF THE CASE

24. A Quick Response Code, also known as QR Code, is a two-dimensional type of barcode developed in Japan in 1994. QR Codes are scannable using smartphone devices, which are natively developed to scan and detect QR Codes. These codes are generated using an online QR Code generator that displays an online information to the scanner when scanned.

25. Today, Americans are increasingly connected to the world of digital information while "on the go" via smartphones.[2] Indeed, a growing share of Americans use smartphones as their primary means of online access. The use of smartphones has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike. The built-in digital camera and Internet access are consolidated to provide a new system of information seeking.

---

[2] The wide-scale adoption of this technology is staggering. According to Pew Research Center, the vast majority of Americans – 96% – now own a cellphone of some kind. And the share of Americans that own smartphones has climbed from just 35% in 2011 to 81% in 2019—amounting to more than 265 million people in the United States. U.S and World Population Clock, U.S. Census Bureau, https://www.census.gov/popclock/ (last accessed Sept. 22, 2022) (U.S. population on June 12, 2019 was 328.1 million).

26. The system is based on the idea of utilizing QR codes affixed to an object and scanned using a smartphone equipped with QR reader software. The reader decodes the barcode to a URL and directs the phone's browser to fetch an audio file from the Web that contains a verbal description of the object. QR Codes are the most readily available methods by which a blind person can independently access information that is printed on product labels and tags and product packaging. Unless labels, tags, and packaging are designed to allow for use in this manner, blind persons are unable to fully access the information and instructions contained therein. Today, QR Codes are used in all industries including advertising, business, healthcare, and education. More recently, with the Advent of Covid-19, QR Codes have become regular fixtures in restaurants, in brochures, flyers, posters, billboards, items and products, and business cards.

27. Food packaging often contains QR Codes enabling the blind and visually-impaired to access information about the food including allergy warnings, nutritional information, list of ingredients, cooking directions, as well as recommended recipes. Companies like Barilla, a pasta company, recently incorporated QR Codes on the packaging of its products in order to create a diverse and accessible product for its consumers[3].

28. Medical and healthcare products often contain QR Codes which enable the blind and visually-impaired to learn about drug safety, administration directions, ingredients, warnings, and expiration dates, amongst other features.

29. The U.S. Equal Employment Opportunity Commission recently added a QR Code to its "Know Your Rights" workplace poster which, when scanned into a smartphone, directs users to the EEOC's webpage detailing how to file a charge. *See* https://www.eeoc.gov/newsroom/eeoc-releases-updated-know-your-rights-poster.

---

[3] *See* https://www.prnewswire.com/news-releases/barilla-adds-qr-codes-on-packaging-to-assist-visually-impaired-customers-in-expanded-partnership-with-be-my-eyes-301651355.html.

30. Likewise, apparel retailers have realized the advantages of utilizing digital labels on clothing to deliver information to consumers. In addition to displaying important and useful information about a product through physical tags and labels, many retailers have voluntarily opted to include a QR Code inscribed on their product labels and tags which allows the user to learn about the product, the size, care instructions, price, country of origin, and even complete the purchase with their smartphones. Companies like Levi's, Diesel, Victoria's Secret, Nike, Under Armour, and Ralph Lauren have figured out that QR Codes not only benefit the consumer, but also benefit the brand.

31. While certain label information, like care and fiber content are mandated to be displayed through a physical label on a garment, there is no reason why the same information cannot also be included in a QR Code on the label itself or even on the garment. In fact, the American Apparel & Footwear Association ("AAFA"), the national trade association representing apparel, footwear and other sewn products companies, recently asked Congress to allow for mandated labeling information on clothing to be delivered to consumers through digital labels, including QR Codes. While the AAFA seeks to completely replace the physical labels with digital labels, one of the main reasons cited for the use of digital labels is that "Consumers that are visually impaired will finally have access to care and fiber content information because digital labeling will enable them to increase the font size of the labeling information, use text to voice, or other digital assistance technologies. Today's printed labels in very small fonts effectively deny the 4 million plus visually impaired consumers in the United States, and countless millions more worldwide, access to key labeling information."[4] Lululemon is not only a member of AAFA, but one of its

---

[4] The full content of the June 9, 2022 AAFA Letter to Congress can be found at:
file:///C:/Users/Dan/Downloads/Labeling%20Digital%20Labeling%20Industry%20Ltr%20to%20Congress%202206%20-%20FINAL%20220609%20(1).pdf

executives, Ted Dagnese, is Vice Chair of the Board of Directors of AAFA, and as such, supports digital labels.

32. While Plaintiff does not advocate for the complete replacement of physical labels with digital ones, she does agree with the AAFA's position (and in turn, Lululemon's position) that digital labels will give her and other blind persons access to the mandatory care and fiber content as well as other information when visiting a Lululemon store and afterwards. The apparel labeling rules, as set forth in the *Wool Product Labeling Act*, 15 U.S.C. § 68; the *Textile Products Identification Act*, 15 U.S.C. §70; and the *Care Labeling of Textile Wearing Apparel and Certain Piece Goods as Amended Rule*, 16 CFR Part 423 mandate that apparel products include specific information about the products including (a) the fiber content, (b) the country of origin, (c) the manufacturer or dealer identity, and (d) care instructions. However, the important information contained on these physical labels cannot be accessed by the blind and visually impaired. Nor do adequate auxiliary aids exist to enable continued access to this information. The statutes and regulation do not prohibit the inclusion of digital labels *in addition to* the mandatory physical labels. In fact, the AAFA has argued that the plain meaning of the statues and regulation imply that physical labels are not required at all and that the permissible use of "other means of identification" beyond the traditional label or tag (*See* 15 U.S.C. § 68b(1) and (2) and 15 U.S.C. § 70b(d)) and that label information be shown "in words and figures plainly legible" (*See* 15 U.S.C. § 68b(a)(3) and (4) and 15 U.S.C. § 70b(b) and (h)) imply that QR Codes alone can be used to deliver the mandatory product information. Nevertheless, all parties agree that the information contained on labels and tags which are stitched to the apparel is extremely important and should be available to all purchasers, including the blind and visually impaired.

**FACTUAL ALLEGATIONS**

10

33. Defendant owns and operates Lululemon Stores in New York State and throughout the United States and provides athletic apparel, footwear, accessories, bags, yoga mats, and equipment for purchase, amongst other products and services.

34. Each and every item sold at a Lululemon Store contains physical labels and tags. The labels and tags contain information such as the size of the item, the material that it is made of, the country of origin, and care instructions including how to safely wash and care for the product[5].

35. This case arises out of Lululemon's policy and practice of denying the blind and visually impaired access to the information contained in the labels and tags. Due to Lululemon's failure and refusal to remove access barriers to the labels and tags without providing adequate auxiliary aids, Plaintiff and other blind individuals have been and are being denied equal access to Lululemon Stores, as well as to the numerous goods, services and benefits offered to the public through Lululemon Stores.

36. The labels and tags attached to the products sold at Lululemon Stores contain information that, by federal statutes promulgated by the Federal Trade Commission, must be conveyed to the consumer and which is critical in the decision-making process of whether or not to purchase the product and how to care for the product. For instance, Plaintiff and other blind visitors to Lululemon Stores do not know what material an item is made from. Some may be allergic to certain fabrics. They cannot access care and washing instructions and may inadvertently ruin the product by washing it incorrectly. These barriers are pervasive and relate to each and every product sold at each and every Lululemon Store. While the labeling statutes and rules do not

---

[5] The price tags attached to each product actually bear a bar code and a QR Code. However, the digital information contained on the bar code and QR Code can only be accessed by Lululemon employees and contain inventory information.

mandate that labels be accessible (i.e. in digital format), the ADA does. And Lululemon, through its membership in AAFA fully supports digital labels.

37. QR Codes are 2D barcodes which contain any kind of information that can redirect scanners to online information. These codes are accessed using a smartphone device. Plaintiff owns an iPhone and uses VoiceOver screen-reader software in order to access online content.  VoiceOver is the most popular screen-reader software utilized worldwide by visually-impaired individuals for Apple tablets and phones.  "VoiceOver is a gesture-based screen reader that lets you enjoy using iPhone even if you don't see the screen."  *See* Apple, *Accessibility*, available at https://apple.com/accessibility/iphone/vision/.  Had Defendant included the information it provided in the labels and tags in a digital label, including a QR Code, Plaintiff could have accessed the information on her smartphone and continued to do so even *after* completing a purchase. By failing to provide a digital label and/or auxiliary aids, Plaintiff and other blind Lululemon customers are unable to determine what is on the labels and tags and unable to make purchase decisions and ultimately unable to make a purchase at Lululemon Stores.

38. QR Codes are readily available and easy to install. In addition to assisting the blind and visually impaired, companies can benefit from QR Codes in that the codes allow companies to authenticate its products and prevent counterfeiting.[6] So adding a QR Code is a win-win for both the blind and the retailer.

39. Due to the Lululemon Store's inaccessible labels and tags, Plaintiff and blind customers must in turn spend time, energy, and/or money to make their purchases with the assistance of a third party. Lululemon Store employees are often busy helping other customers and often do not have the time and patience to assist a blind person. Asking help from strangers

---

[6] Using QR Codes to Track and Identify Counterfeit Products. Found at: https://www.infosys.com/industries/high-technology/white-papers/documents/deter-counterfeiting.pdf

is uncomfortable and blind people cannot know if a stranger is even nearby or can be trusted. By contrast, if the products at Lululemon Stores contained digital labels, a blind person could independently investigate products and make purchases as sighted individuals can and do. Moreover, even if a purchase was successfully completed, a blind person cannot independently access the care and wash information once they get home. Thus, Lululemon's inaccessible labels and tags, which require a visual interface, deny Plaintiff and blind customers the ability to independently make purchases at Lululemon Stores.

40. Even if Plaintiff and other blind customers receive effective assistance from a salesperson, the information received becomes moot once they leave the store. What happens a month after the purchase when Plaintiff wants to wash her garment? Is she expected to remember what the salesperson told her about washing the product? Was it in hot water or cold? Does it have to be dry cleaned? Is she expected to remember what every salesperson at every store that she made a purchase in told her about washing instructions? There are no readily available auxiliary aids to help her with care instructions. It would not be reasonable to expect Plaintiff to make a trip to a Lululemon store every time she needed to wash an item. Lululemon may argue that even sighted people lose their labels and tags – they get worn down or detach from the clothing – and finding care and washing instructions would be equivalent to the process a blind person would have to undergo. This would be another red herring. For a label to wear out or fall off an article of clothing, it means that you have worn the article for years and washed it so many times that it wore out. By that time, you probably know how to wash and care for it.

41. The blind need access to labels and tags just as much as sighted persons. The labels which are required by statutes and rules provide for important product information which must be made part of the product. By failing to provide this information in a digital label,

Lululemon Stores contain access barriers which deny the full and equal access to Plaintiff and who would otherwise be able to fully and equally enjoy the benefits and services of Lululemon Stores in New York State and throughout the United States.

42. The labels and tags are not a good but rather, qualify as a means of access to goods and merchandise offered by Lululemon. The labels and tags are part of the merchandise (like food ingredient and chemical compound) and Lululemon would not be required to create a special, accessible merchandise or alter its inventory to include accessible or special goods for persons with disabilities. The labels and tags are so intertwined with Lululemon's physical stores that Plaintiff would not be able to browse and try on clothing at a Lululemon store without the labels and tags being accessible. Plaintiff and other blind visitors to Lululemon cannot try on clothing if they do not know the size, the fabric (could be allergic to certain fabrics), and the care instructions. Even after making a purchase, the information on the labels needs to remain accessible so that blind persons will know how to take care of and wash the clothing purchased at Lululemon. If Lululemon would utilize digital labels, it would not need to alter the mix of goods that it sells to include accessible goods for the disabled. Creating special sizes for the disabled may be considered an alteration of the mix of goods, but including a digital label (i.e. inserting a QR Code on the existing label or on the garment itself), does not alter the nature or mix of goods. Lululemon, through its leadership position in AAFA, has already asked the FTC and members of Congress to use digital labels. As such, the technology must be readily available for use (as it is used by many other retailers). In fact, Lululemon already includes QR Codes on the price tag of each and every item it sells in its stores. While those QR Codes are currently only for internal inventory purposes, amending them or creating another QR Code for the required information would not be an undue hardship and would not alter the inventory. The digital QR

Codes can be added to existing labels or imprinted on the garment itself. No separate device is required to be created. QR Codes, unlike Braille, can contain an infinite amount of information, and as the amount of required disclosures grows, the size of the print shrinks. The QR Codes do not have to be unique to each product. Unlike variable items like price, fabric content and care instructions are static and are the same for each line of products. For instance, all leggings and shirts sold could be made of the same fabric and require the same care. Moreover, unlike gift cards, including Braille gift cards, the content of garment digital labels does not change and can and should be accessible without the need of auxiliary aids. Gift card values change with each use. Whether you are sighted or blind, looking at or touching a gift card will not tell you the monetary balance remaining on the card. All people must use an auxiliary aid, whether it is a salesperson or a computer link to access the value of a gift card. Digital labels, on the other hand, can be accessed without auxiliary aids other than your iPhone at all. While Lululemon may claim that auxiliary aids exist in its stores in the form of salespeople, that is more wishful thinking than reality.

43. Plaintiff, Paradise Morgan, loves shopping at Lululemon stores. In fact, she prefers to browse and make purchases in person as opposed to making purchases online. She has visited many Lululemon Stores in Manhattan and elsewhere and has made purchases at those stores. However, the purchases were always made with the assistance of others since she is unable to independently access the information contained in the product labels and tags and therefore, unable to learn about the products and unable to make purchase decisions on her own. When shopping with others, they can read the inaccessible labels and tags, informing Plaintiff about the size, price, material, country of origin, and washing instructions. However, once she returned home and wanted to wash the items purchased, she had no idea how to wash them

because she could not independently access the care instructions. Plaintiff has also visited Lululemon Stores on her own. When visiting on her own, she has never been able to make a purchase since she could not access the labels and tags which contain the size, washing instructions, country of origin, and material description. Moreover, she was never able to receive assistance from any salesperson. On November 22, 2022, Plaintiff visited the Lululemon Store on 86th Street and 3rd Avenue. On December 2, 2022, Plaintiff visited the Lululemon Store at Soho and Broadway. On both occasions, she was alone and was unable to independently complete a purchase since she was unable to read the labels and tags. On both occasions she did not receive any assistance from any sales persons or other staff members. These access barriers have caused Lululemon to be inaccessible to, and not independently usable by, blind and visually-impaired persons.  Amongst other access barriers experienced, Plaintiff was unable to purchase clothing including the Wunder Train High-Rise Tight leggings, the Scuba Oversized Half-Zip Hoodie, and the Classic-Fit Cotton-Blend T-Shirt at Defendant's physical locations.

44. Moreover, if Defendant removes the access barriers that currently exist on the labels and tags by adding digital labels, Plaintiff will definitely visit Lululemon Stores in the future in order to independently purchase clothing. Lululemon stores are conveniently located throughout Manhattan and public transportation is available for Plaintiff to use. The products are well made, Plaintiff likes to work out and is always in need of activewear, and the Stores contain a wide selection of goods. Plaintiff has visited Lululemon Stores many times throughout her life, loves the products, enjoys the in-person shopping experience and environment, and has made purchases at the Stores.

45. As a result of the access barriers described above, and others, Defendant failed to communicate information about its products and services to Plaintiff effectively and will

continue to do so after a purchase is completed, which in turn denied Plaintiff full and equal access to Defendant's Store and deterred her from returning to the store in the future.

46. As described above, Plaintiff has actual knowledge of the fact that Defendant's labels and tags contain access barriers causing them to be inaccessible, and not independently usable by, blind and visually-impaired persons.

47. These barriers to access have denied Plaintiff full and equal access to, and enjoyment of, the goods, benefits and services of Lululemon Stores.

48. Defendant engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

(a) constructed and maintained physical premises with merchandise that is inaccessible to Plaintiff and other blind persons with knowledge of the discrimination; and/or

(b) constructed and maintained physical premises with merchandise that is not sufficiently intuitive and/or obvious that they are inaccessible to Plaintiff and other blind persons; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to Plaintiff and other blind persons.

49. Defendant utilizes standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others.

50. The ADA "as a whole is intended 'to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'"[7]

51. Title III advances that goal by providing that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the products,

---

[7] *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 589 (1999) (*quoting* 42 U.S.C. § 12101(b)(1).

services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."[8]

52. DOJ regulations require that a public accommodation "furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities."[9]

53. DOJ defines "auxiliary aids and services" to include "accessible electronic and information technology" or "other effective methods of making visually delivered materials available to individuals who are blind or have low vision."[10]

54. Therefore, the ADA mandates that places of public accommodation provide auxiliary aids and services to make visual materials available to individuals who are blind.[11]

55. Defendant is a place of public accommodation under the ADA because it is a "sales or rental establishment" and/or "other service establishment."[12]

56. As a service, facility, advantage, or accommodation of Defendant, Defendant must ensure blind patrons have full and equal access to the product information available at Lululemon Stores.

57. Because of Defendant's denial of full and equal access to, and enjoyment of, the goods, benefits and services of Lululemon Stores, Plaintiff has suffered an injury-in-fact which is concrete and particularized and actual and is a direct result of defendant's conduct.

## **FIRST CAUSE OF ACTION**
(Violation of 42 U.S.C. §§ 12181 *et seq.* – Title III of the Americans with Disabilities Act)

---

[8] 42 U.S.C. § 12182(a)
[9] 28 C.F.R. § 36.303(c)(1); *see Bragdon v. Abbott*, 524 U.S. 624, 646 (1998) (holding that DOJ's administrative guidance on ADA compliance is entitled to deference).
[10] 28 C.F.R. § 36.303(b)(2).
[11] 28 C.F.R. § 36.303.
[12] 42 U.S.C. § 12181(7)(E), (F)

58. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 57 of this Complaint as though set forth at length herein.

59. Title III of the American with Disabilities Act of 1990, 42 U.S.C. § 12182(a) provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  Title III also prohibits an entity from "[u]tilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability."  42 U.S.C. § 12181(b)(2)(D)(I).

60. Lululemon Stores located in New York State are a sales establishment and public accommodation within the definition of 42 U.S.C. §§ 12181(7)(E).

61. Defendant is subject to Title III of the ADA because it owns and operates Lululemon Stores.

62. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

63. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

64. Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable

19

modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

65. In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

66. There are readily available, well-established guidelines for making digital labels and tags, including the use of QR Codes for making the information on product labels and tags accessible to the blind and visually-impaired. These guidelines have been followed by other business entities in making the information on their labels and tags accessible. Incorporating the basic components to make the information on their labels and tags accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

67. The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 *et seq*., and the regulations promulgated thereunder. Patrons of Lululemon Stores who are blind have been denied full and equal access to the critical information provided on the labels and tags attached to the products sold at Lululemon Stores, have not been provided services that

are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled patrons.

68. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct.  These violations are ongoing.

69. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of the Lululemon Stores in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq.* and/or its implementing regulations.

70. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff will continue to suffer irreparable harm.

71. The actions of Defendant were and are in violation of the ADA, and therefore Plaintiff invokes her statutory right to injunctive relief to remedy the discrimination.

72. Plaintiff is also entitled to reasonable attorneys' fees and costs.

73. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

**SECOND CAUSE OF ACTION**
(Violation of New York State Human Rights Law, N.Y. Exec. Law
Article 15 (Executive Law § 292 *et seq.*))

74. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 73 of this Complaint as though set forth at length herein.

75. N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation . . . because of the . . . disability of any person,

directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof.".

76. Lululemon Stores located in New York State are a sales establishment and public accommodation within the definition of N.Y. Exec. Law § 292(9).

77. Defendant is subject to the New York Human Rights Law because it owns and operates the Lululemon Stores.  Defendant is a person within the meaning of N.Y. Exec. Law. § 292(1).

78. Defendant is violating N.Y. Exec. Law § 296(2)(a) in refusing to update or remove access barriers to the product labels and tags, causing the Lululemon Stores to be completely inaccessible to the blind.  This inaccessibility denies blind patrons the full and equal access to the facilities, goods and services that Defendant makes available to the non-disabled public.

79. Specifically, under N.Y. Exec. Law § unlawful discriminatory practice includes, among other things, "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations."

80. In addition, under N.Y. Exec. Law § 296(2)(c)(II), unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would

fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

81. There are readily available, well-established guidelines for making digital labels and tags, including the use of QR Codes for making the information on product labels and tags accessible to the blind and visually-impaired. These guidelines have been followed by other business entities in making the information on their labels and tags accessible. Incorporating the basic components to make the information on their labels and tags accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

82. Defendant's actions constitute willful intentional discrimination against the Plaintiff and other blind persons on the basis of a disability in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296(2) in that Defendant has:

(a) constructed and maintained physical premises with merchandise that is inaccessible to Plaintiff and other blind persons with knowledge of the discrimination; and/or

(b) constructed and maintained physical premises with merchandise that is not sufficiently intuitive and/or obvious and are inaccessible to Plaintiff and other blind persons; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to Plaintiff and other blind persons.

83. Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

84. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff on the basis of disability in the full and equal enjoyment of the

goods, services, facilities, privileges, advantages, accommodations and/or opportunities of the

Lululemon Stores under N.Y. Exec. Law § 296(2) *et seq*. and/or its implementing regulations.

Unless the Court enjoins Defendant from continuing to engage in these unlawful practices,

Plaintiff will continue to suffer irreparable harm.

85. The actions of Defendant were and are in violation of the New York State

Human Rights Law and therefore Plaintiff invokes her right to injunctive relief to remedy the

discrimination.

86. Plaintiff is also entitled to compensatory damages, as well as civil penalties

and fines pursuant to N.Y. Exec. Law § 297(4)(c) *et seq*. for each and every offense.

87. Plaintiff is also entitled to reasonable attorneys' fees and costs.

88. Pursuant to N.Y. Exec. Law § 297 and the remedies, procedures, and rights set

forth and incorporated therein, Plaintiff prays for judgment as set forth below.

### **THIRD CAUSE OF ACTION**
(Violation of New York State Civil Rights Law, NY CLS Civ R,
Article 4 (CLS Civ R § 40 *et seq*.))

89. Plaintiff repeats, realleges and incorporates by reference the allegations

contained in paragraphs 1 through 88 of this Complaint as though set forth at length herein.

90. Plaintiff served notice thereof upon the attorney general as required by N.Y.

Civil Rights Law § 41.

91. N.Y. Civil Rights Law § 40 provides that "all persons within the jurisdiction

of this state shall be entitled to the full and equal accommodations, advantages, facilities, and

privileges of any places of public accommodations, resort or amusement, subject only to the

conditions and limitations established by law and applicable alike to all persons.  No persons,

being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any such

place shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities and privileges thereof . . ."

92. N.Y. Civil Rights Law § 40-c(2) provides that "no person because of . . . disability, as such term is defined in section two hundred ninety-two of executive law, be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision."

93. The Lululemon Stores located in New York State are a sales establishment and public accommodation within the definition of N.Y. Civil Rights Law § 40-c(2).

94. Defendant is subject to New York Civil Rights Law because it owns and operates Lululemon Stores.  Defendant is a person within the meaning of N.Y. Civil Law § 40-c(2).

95. Defendant is violating N.Y. Civil Rights Law § 40-c(2) in refusing to update or remove access barriers to the product labels and tags, causing the Lululemon Stores to be completely inaccessible to the blind.  This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that Defendant makes available to the non-disabled public.

96. There are readily available, well-established guidelines for making digital labels and tags, including the use of QR Codes for making the information on product labels and tags accessible to the blind.  These guidelines have been followed by other business entities in making the information on their labels and tags accessible.  Incorporating the basic components to make the information on their labels and tags accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

97. In addition, N.Y. Civil Rights Law § 41 states that "any corporation which shall violate any of the provisions of sections forty, forty-a, forty-b or forty two . . . shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby . . ."

98. Specifically, under N.Y. Civil Rights Law § 40-d, "any person who shall violate any of the provisions of the foregoing section, or subdivision three of section 240.30 or section 240.31 of the penal law, or who shall aid or incite the violation of any of said provisions shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any court of competent jurisdiction in the county in which the defendant shall reside . . ."

99. Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct.  These violations are ongoing.

100. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff on the basis of disability are being directly indirectly refused, withheld from, or denied the accommodations, advantages, facilities and privileges thereof in § 40 *et seq.* and/or its implementing regulations.

101. Plaintiff is entitled to compensatory damages of five hundred dollars per instance, as well as civil penalties and fines pursuant to N.Y. Civil Rights Law § 40 *et seq.* for each and every offense.

**FOURTH CAUSE OF ACTION**
(Violation of New York City Human Rights Law,
N.Y.C. Administrative Code § 8-102, *et seq.*)

102. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 101 of this Complaint as though set forth at length herein.

103. N.Y.C. Administrative Code § 8-107(4)(a) provides that "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of . . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person, any of the accommodations, advantages, facilities or privileges thereof."

104. Lululemon Stores located in New York State are a sales establishment and public accommodation within the definition of N.Y.C. Administrative Code § 8-102(9).

105. Defendant is subject to City Law because it owns and operates the Lululemon Stores.  Defendant is a person within the meaning of N.Y.C. Administrative Code § 8-102(1).

106. Defendant is violating N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to the product labels and tags, causing the Lululemon Stores to be completely inaccessible to the blind.  This inaccessibility denies blind patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public.  Specifically, Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity."  N.Y.C. Administrative Code § 8-107(15)(a).

107. Defendant's actions constitute willful intentional discrimination against the Plaintiff and other blind persons on the basis of a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a) in that Defendant has:

(a) constructed and maintained physical premises with merchandise that is inaccessible to Plaintiff and other blind persons with knowledge of the discrimination; and/or

(b) constructed and maintained physical premises with merchandise that is not sufficiently intuitive and/or obvious and are inaccessible to Plaintiff and other blind persons; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to Plaintiff and other blind persons.

108. Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct.  These violations are ongoing.

109. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of the Lululemon Stores under N.Y.C. Administrative Code § 8-107(4)(a) and/or its implementing regulations.  Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and other blind persons will continue to suffer irreparable harm.

110. The actions of Defendant were and are in violation of City law and therefore Plaintiff invokes her right to injunctive relief to remedy the discrimination.

111. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense.

112. Plaintiff is also entitled to reasonable attorneys' fees and costs.

113. Pursuant to N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION
(Declaratory Relief)

114. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 113 of this Complaint as though set forth at length herein.

115. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Lululemon Stores contain access barriers denying blind customers the full and equal access to the goods, services and facilities of the Lululemon Stores, which Lululemon owns, operates and/or controls, fails to comply with applicable laws including, but not limited to, Title III of the American with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.*, and N.Y.C. Administrative Code § 8-107, *et seq.* prohibiting discrimination against the blind.

116. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands judgment in favor of Plaintiff and against the Defendants as follows:

a) A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.*, and N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

b) A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the information provided in the product labels and tags, into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the Lululemon Stores are readily accessible to and usable by blind individuals;

c)  A declaration that Defendant owns, maintains and/or operates its Stores in a manner which discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*., N.Y. Exec. Law § 296, *et seq*., and N.Y.C. Administrative Code § 8-107, *et seq*., and the laws of New York;

d)  Compensatory damages in an amount to be determined by proof, including all applicable statutory damages and fines, to Plaintiff for violations of their civil rights under New York State Human Rights Law and City Law;

e)  Plaintiff's reasonable attorneys' fees, expenses, and costs of suit as provided by city, state and federal law;

f)  For pre- and post-judgment interest to the extent permitted by law; and

g)  For such other and further relief which this court deems just and proper.

Dated: Scarsdale, New York
       January 18, 2023

                                    SHAKED LAW GROUP, P.C.
                                    Attorneys for Plaintiff

                              By:*/s/Dan Shaked*_____
                                    Dan Shaked, Esq.
                                    14 Harwood Court, Suite 415
                                    Scarsdale, NY 10583
                                    Tel. (917) 373-9128
                                    e-mail: ShakedLawGroup@Gmail.com