UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PARADISE MORGAN,<br><br>        *Plaintiff*,<br><br>vs.<br><br>LULULEMON ATHLETICA INC.,<br><br>        *Defendant*. | Action No. 1:23-cv-434-VB |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT LULULEMON ATHLETICA'S MOTION TO DISMISS**

**SHAKED LAW GROUP, P.C.**
Dan Shaked, Esq.
14 Harwood Court, Suite 415
Scarsdale, NY 10583
Tel. (917) 373-9128
Email: ShakedLawGroup@gmail.com
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

FACTUAL BACKGROUND .......................................................................................................... 1

    I.    The Parties .......................................................................................................................... 1

        A.    The Plaintiff ................................................................................................................ 1

        B.    The Defendant (Lululemon) ...................................................................................... 2

    II.    The Present Dispute: Lululemon's Physical Labels and Tags ........................................ 2

STANDARD OF REVIEW ............................................................................................................ 6

ARGUMENT .................................................................................................................................. 6

    I.    Plaintiff Has Stated a Claim Under the ADA .................................................................. 6

        A.    Plaintiff Has Asserted Several Theories of Discrimination Under The ADA ................ 7

    II.    Lululemon's Remaining Arguments Lack Merit ............................................................ 9

        A.    Tags Do Not Make Up A Store's Inventory. .................................................................. 9

        B.    Lululemon Employees Are Not Automatically Considered  "Qualified Readers" Per Se. ……………………………………………………………………………………12

        C.    Lululemon Cannot Belatedly Press Claims Related to Undue Burden or Significant Alteration. ................................................................................................................. 13

        D.    Plaintiff's Home Has a Nexus to Lululemon Stores With Regard to Labels and Tags  14

        E.    Lululemon's Fallback Declaratory-Relief Argument Fails ........................................... 14

    III.    Plaintiff's State and City Claims Survive as Well ……………………………………16

CONCLUSION ............................................................................................................................. 16

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................................. 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)). ............................................................................................................... 6

*Camarillo v. Carrols Corp.*,
    518 F.3d 153 (2d Cir. 2008) ............................................................................................ 6, 7, 13

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003) .................................................................................................................. 10

*Dominguez v. Banana Republic*, LLC,
    2020 WL 1950496 (S.D.N.Y. April 23, 2020) ................................................................ 9, 10, 12

*Dominguez v. Taco Bell Corp.*,
    2020 WL 3263258 (S.D.N.Y. June 17, 2020) ......................................................................... 12

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
    411 F.3d 384 (2d Cir. 2005) .................................................................................................... 16

*Einsohn v. New York City Dep't of Educ.*,
    2022 WL 955110 (E.D.N.Y. Mar. 30, 2022) ........................................................................... 13

*Hernandez v. Coughlin*,
    18 F.3d 133 (2d Cir. 1994) ........................................................................................................ 6

*Kreisler v. Second Ave. Diner Corp.*
    2011 WL 4686500, at *2 (S.D.N.Y. Oct. 5, 2011) ……………………………………………..8

*Luckey v. St. Luke's Cornwall Hosp.*,
    2021 WL 4124840 (S.D.N.Y. Sept. 9, 2021) ........................................................................... 13

*Mary Jo C. v. NY State and Local Retirement Sys.*,
    707 F.3d 144 (2d Cir. 2013) ...................................................................................................... 8

*Mendez v. Outback Steakhouse of Fla.,* LLC,
    2020 WL 4273820 (S.D.N.Y. July 23, 2020 ........................................................................... 11

*Panarra v. HTC Corp.*,
    598 F.Supp.3d 73 (W.D.N.Y., 2022) ....................................................................................... 13

*Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*,
    507 F.3d 117 (2d Cir.2007) ....................................................................................................... 6

*Rescuecom Corp. v. Google, Inc.*,
    562 F.3d 123 (2d Cir. 2009)................................................................................................... 6

*Shaywitz v. Am. Bd. of Psychiatry & Neurology,*
     848 F. Supp. 2d 460 (S.D.N.Y. 2012)..................................................................................... 8

*Thorne v. Boston Mkt. Corp.,*
    469 F. Supp. 3d 130 (S.D.N.Y. 2020)...................................................................................... 9

*Volman v. Peri Peri 2 LLC et al.,*
    No. 21-cv-4449 (RPK), slip op. (E.D.N.Y. Aug. 16, 2022) ....................................................... 15

**Statutes**

42 U.S.C. § 12102........................................................................................................................ 1

42 U.S.C. § 12103...................................................................................................................... 13

42 U.S.C. § 12182........................................................................................................................ 8

42 U.S.C. § 12188...................................................................................................................... 16

28 C.F.R. § 36.101
………………………………………………………………………....…1

28 C.F.R. § 36.303………………………………………………………………….…10, 12, 13

28 C.F.R. § 36.307
……………………………………………………………………………10

**Other Authorities**

Daria W. Jackson, *Standard Bar Codes Beware: Smartphone Users May Prefer QR Codes*, 103
    LAW LIBR. J. 153, 154 (2011). ............................................................................................. 3

Department of Justice, *Technical Assistance Manual on the American With Disabilities Act*..... 10

**PRELIMINARY STATEMENT**

Plaintiff, Paradise Morgan, a visually impaired person—completely blind as a result of a brain tumor and improper medical procedure which cannot be cured—submits the following in opposition to Defendant Lululemon Athletica's ("Lululemon") Motion to Dismiss ("MTD"), dated May 5, 2023, arguing that Plaintiff failed to state a claim under Federal Rule of Civil Procedure 12 (b)(6). Plaintiff is a member of a protected class under the Americans with Disabilities Act, as amended, 42 U.S.C. § 12102(1)-(2) ("ADA" or the "Act") and the regulations implementing set forth at 28 C.F.R. §§ 36.101, *et seq*., as well as the New York State Human Rights Law and the New York City Human Rights Law.

Preliminarily, if Defendant's labels and tags contained digital labels, including QR Codes, which are accessible, this lawsuit would not have been filed. If it turned out that Plaintiff was mistaken about the accessibility of Defendant's QR Codes, this action would have been voluntarily discontinued. The facts remain – the QR Codes on Lululemon's labels and tags cannot be accessed by Plaintiff. Defendant's claim that the QR Codes are accessible is a false flag, attempting to divert attention from its continuing discrimination against the blind.

**FACTUAL BACKGROUND**

I. **The Parties**

  A. **The Plaintiff**

Plaintiff Paradise Morgan is a visually-impaired and legally blind person. Complaint, ECF Dkt. 1 ("Compl.") ¶ 2, 19. Plaintiff requires the use of her smartphone, particularly its text-to-voice features, for assistance and navigation in her day to day. *Id.* ¶ 2, 19. Among other things, she relies on "VoiceOver screen-reader software[,] the most popular screen-reader software utilizes worldwide by visually impaired individuals for Apple…." *Id.* ¶ 37.

1

Plaintiff has regularly visited and shopped at Lululemon locations near her home, including in Manhattan. *Id.* ¶ 5, 11. She loves shopping at Lululemon stores. *Id.* ¶ 43. Unfortunately, as a blind customer, she is unable to visually read and evaluate a given product's label or tag, which is vital to the shopper decision-making process, as further explained below. *Id.* ¶ 36. As more fully detailed in her accompanying affidavit, Plaintiff regularly uses her iPhone with day-to-day navigation across many contexts. Declaration of Paradise Morgan, ¶ 2–3. However, she has been unsuccessful in her in-store Lululemon experiences, which have proven unworkable despite good-faith attempts. *Id.* ¶¶ 5–6.

### B. **The Defendant (Lululemon)**

Lululemon is a clothing retailer with nearly 500 storefronts across the United States and overseas with $8.1 billion in revenues in 2022 alone[1].

"We want every one of our guests to feel valued and taken care of when they're using our site. That's why we're taking careful measures to ensure an excellent user experience for guests who use assistive technology to access it," according to Lululemon's stated policy[2]. That same policy makes unequivocal commitments that ring hollow today.

### II. **The Present Dispute: Lululemon's Physical Labels and Tags**

Lululemon and its customers rely on physical labels and tags, which contain legally mandatory and important information related to "(a) the fiber content, (b) the country of origin, (c) the manufacturer or dealer identity, and (d) care instructions, among other things." Compl. ¶ 32. As general matter, most of this information is typically on the labels and tags because of regulatory and legal requirements, which have only continued to increase. *Id.* This has also given

---

[1] *https://corporate.lululemon.com/media/press-releases/2023/03-28-2023-210523147#:~:text=For%202022%20compared%20to%202021,store%20net%20revenue%20increased%2029%25*
[2] *See* Lululemon, *Accessibility Statement*, https://pnimages.lululemon.com/content/dam/lululemon/www-images/Footer/Utilities/Accessibility/Accessibility%20Statement%20-%20Updated%20Content_June2018.pdf (last visited May 8, 2023).

2

rise to "label creep," which refers to the phenomena of "pages of labels in small text in multiple languages and with confusing symbols that are hard to read and uncomfortable" for both blind and sighted customer alike.³

  

*"Digital Solutions" (Source: Avery Dennison)*

Today, numerous retailers have turned to digital labels—like a QR code—in addition to physical labels and tags. And businesses across the country have accepted QR codes, especially because of the minimal costs. *See* Compl. ¶ 26–30. Even big-name clothing retailers—Victoria's Secret, Zara, Nike, Under Armour, and Ralph Lauren (to name a few)—utilize QR Codes to supplement their tags/labels. *Id.* ¶ 30. To some extent, QR codes' popularity is explained, in part,

  

by "[t]he low cost of producing [them]… one of the exciting aspects of the technology. QR generators can be downloaded at no cost." Daria W. Jackson, *Standard Bar Codes Beware: Smartphone Users May Prefer QR Codes*, 103 LAW LIBR. J. 153, 154 (2011).

---

³ Jasmin M. Chua, What Consumers Really Want to See on an Eco-Label, Sourcing Journal, July 8, 2022, available at https://sourcingjournal.com/sustainability/sustainability-news/fordham-responsible-business-coalition-aafa-eco-labels-sustainability-354105/ (last visited Mar. 2, 2023).

Here, Plaintiff could easily retrieve a given product's information with a QR code while in store. Compl. ¶ 37. Like countless other blind shoppers, Plaintiff relies on accessibility software for vital assistance. *See* Amanda Morris, *Navigational Apps for the Blind Could Have a Broader Appeal*, N.Y. Times, https://www.nytimes.com/2021/12/20/technology/navigational-apps-blind-low-vision.html (last visited Feb. 17, 2023) (chronicling QR code technologies for blind customers).

However, Lululemon, unlike many other retailers, does not use digital labels or anything similar for its labels and tags. No doubt though "[t]he blind need access to labels and tags just as much as sighted persons." Compl. ¶ 41. "When visiting on her own, however, "[Plaintiff] has never been able to make a purchase" because, among other things, she "could not access the labels and tags which contain the size, washing instructions, country of origin, and material description." Compl. ¶ 43. Plus, "Lululemon Store employees are often busy helping other customers and often do not have the time and patience to assist a blind person." *Id.* ¶ 39. Until Lululemon remedies such barriers, Plaintiff remains precluded from obtaining important material, product, and care information related to any given product. *Id.* ¶¶ 9, 32–36, 39.

This does not even begin to shed any light on Lululemon's relationship with AAFA—a major trade association that represents hundreds of the largest garment companies in the United States—which may be digital labels' biggest public supporter.

**Why is Lululemon opposing this lawsuit?**

Lululemon is one of the leading garment retailers fighting to make digital labels *mandatory!*

Ted Dagnese is the Chief Supply Chain Officer of Lululemon. As such, he sits on the key executive team at Lululemon. Mr. Dagnese is also the Chair of the Board of Directors of the

American Apparel & Footwear Association ("AAFA"), the national trade association representing apparel, footwear and other sewn products companies. As such, he represents the interests of Lululemon through his leadership position on AAFA's Board. On June 9, 2022 – just a few months prior to the filing of this action – the AAFA wrote a letter to members of Congress urging Congress to "approve legislation and direct the Federal Trade Commission to allow for mandated labeling information on clothes to be delivered to consumers through *digital labels* . . ., including but not limited to *QR Codes*" (emphasis added). One of the main reasons that the AAFA, and in turn, Lululemon, used to justify the need for digital labels is that,

> Consumers that are visually impaired will finally have access to care and fiber content information because digital labeling will enable them to increase the font size of the labeling information, use text to voice, or other digital assistance technologies. Today's printed labels in very small fonts effectively deny the 4 million plus visually impaired consumers in the United States, and countless millions more worldwide, access to key labeling information.

A copy of the AAFA letter is annexed hereto as Exhibit A. So, if Lululemon and the entire garment retail industry are in favor of digital labels, why is Lululemon moving to dismiss this case?

Lululemon, however, in opposing the relief requested in the Complaint, remains mysteriously silent about its ties to AAFA.

Properly framed, fundamentally, this lawsuit is thus in part an attempt to make product information accessible for the blind like Ms. Morgan. *Id.* ¶ 12. For Lululemon, one easy method of doing so is the use of QR codes, making it a viable, easy option for retailers, All the same, Plaintiff does *not* argue for QR codes to be the exclusive, only, or sole option here. *Id.* ¶ 32. Plaintiff mainly offers QR codes as a model or paradigm for making product information digitally accessible to the blind. *Id.* Moreover, at no time has Plaintiff demanded an immediate

transformation. Plaintiff would be willing to give Lululemon a reasonable time period to add digital labels to their garments.

## STANDARD OF REVIEW

In deciding a Rule 12(b)(6) motion to dismiss, "a court must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123, 127 (2d Cir. 2009) (internal quotation marks omitted); *see, e.g., Camarillo v. Carrols Corp.*, 518 F.3d 153, 155 (2d Cir. 2008) (same). Thus, to survive a motion to dismiss "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The complaint may be dismissed *only* where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.'" *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (emphasis added) (citation omitted); *see Port Dock & Stone Corp. v. Oldcastle Ne., Inc.,* 507 F.3d 117, 121 (2d Cir.2007) ("The plaintiff's factual allegations must be enough to give the defendant fair notice…").

## ARGUMENT

### I. Plaintiff Has Stated a Claim Under the ADA

Plaintiff has adequately stated a claim under Title III of the Americans with Disabilities Act. To do so, she "must allege (1) that she is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against her by denying her a full and equal opportunity to enjoy the services

6

defendants provide." *Camarillo*, 518 F.3d at 156 (collecting cases); *see also Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008).

Here, the parties do not dispute the first and second prongs of the inquiry. That is, Plaintiff is blind and thus she has a disability under the ADA; and as a clothing retailer, Defendant operates a place of public accommodation. At issue, then, is the third element—*i.e.,* whether Lululemon discriminated under the ADA against Plaintiff. *See* MTD at 4. It did and continues to do so. Thus, Plaintiff has adequately stated a claim under the ADA based on separate and multiple theories of discrimination.

### A. Plaintiff Has Asserted Several Theories of Discrimination Under The ADA

As to the question of whether Lululemon's tags and labels—which are inaccessible to blind customers—could present a plausible theory of discrimination under the ADA, the answer is yes.

Before the legal discussion starts, it is crucial to correct Defendant's repeated claims that its labels and tags have accessible QR Codes. As stated in the Complaint, Plaintiff visited Lululemon stores on many occasions and was never able to access any information from digital labels. As counsel for Plaintiff, it is in our interest to verify Plaintiff's allegations to the best of our ability. That included my personal visits to Lululemon stores in White Plains and Manhattan. I personally attempted to scan the QR codes on Lululemon's tags and labels. At no time was I able to access any information when attempting to scan the QR Codes on my iPhone. All I saw was two lines consisting of random numbers and letters. I then asked a store employee in the White Plains location why nothing was coming up and was advised that the QR Codes are for internal inventory purposes only. I had my associate (who is much younger and more tech savvy) visit a Lululemon store and do the same. He came back stating that he could not access any

7

information when scanning the QR Code with his iPhone. Plaintiff is genuinely troubled by Defendant's repeated false claims that it's QR Codes are accessible.

To start with, discrimination under the ADA includes a failure to make reasonable accommodations for the plaintiff's disability. *Shaywitz v. Am. Bd. of Psychiatry & Neurology,* 848 F. Supp. 2d 460, 466 (S.D.N.Y. 2012). It also includes "a failure to make reasonable modifications in policies, practices, or procedures…" 42 U.S.C. § 12182(b)(2)(A)(ii). Plus, discrimination includes, as another example, "a failure…to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently…*because of the absence of auxiliary aids and services*…" *Id.* (iii) (emphasis added).

In this case, Plaintiff contests Lululemon's existing tag/label method on the ground that a blind customer does not receive the same benefits/convenience and critical information as a sighted customer does in their shopping experience. *Cf., e.g., Kreisler v. Second Ave. Diner Corp.*, 2011 WL 4686500, at *2 (S.D.N.Y. Oct. 5, 2011) (plaintiff established standing based on an alleged barrier that "deters access to, or full use and enjoyment of, a place of public accommodation"). Recall that Plaintiff invoked multiple and different discrimination provisions of the ADA in her Complaint. *See* Compl. ¶¶ 58–73 (ADA cause of action). "As a remedial statute, the ADA must be broadly construed to effectuate its purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Mary Jo C. v. NY State and Local Retirement Sys.,* 707 F.3d 144, 160 (2d Cir. 2013).

Moreover, pleading requirements for an ADA claim do not operate or require any heightened standard. As a starting point, Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Further,

8

"[e]ach allegation must be simple, concise, and direct." *Id.* (d)(1). At the motion-to-dismiss stage, in sum, the Court need not assess Plaintiff's claims with such surgical precision. *See Dominguez v. Banana Republic*, LLC, 2020 WL 1950496, at *11.n7 (S.D.N.Y. April 23, 2020) ("the Court need not and should not determine the viability of [Plaintiff's request] as an effective auxiliary aid").

## II. Lululemon's Remaining Arguments Lack Merit

Lululemon contends that Plaintiff has established no viable theory of discrimination under the ADA. MTD at 4-5. First, Lululemon argues, Title III does not require a public accommodation to alter its inventory to include accessible goods. And second, that Plaintiff fails to plead that digital labels are a necessary auxiliary aid or service. *Id.* Neither is persuasive.

### A. Labels and Tags Do Not Make Up A Store's Inventory.

Lululemon first surmises that the addition of a QR code to a product's tag or label—ordinarily stitched to the inner seam of an item—would result in the added inclusion of "accessible or special goods" in its inventory and thus alter its inventory, which goes beyond the scope of its obligations under the law. Defendant then summarily concludes that "it is not required to alter its merchandise to includes QR Code." MTD at 6. That have-it-every-which-way approach is misplaced.

Lululemon's novel theory is nothing more than a red herring. At least three reasons confirm as much. *First*, by definition, a product's labels and tags do not make up (or are considered) part of its "goods" and thus "inventory." Start with one sister court's definition of "goods"—as "something manufactured or produced for sale." *Thorne v. Boston Mkt. Corp.,* 469 F. Supp. 3d 130, 142 (S.D.N.Y. 2020). "Although the ADA does not define 'goods,' the Supreme Court recently considered the definition…and concluded that the most natural reading

9

of that term was "wares; merchandise." *Id.* (cleaned up) (quotation marks in original) (citing *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 31 (2003) (quoting Webster's New International Dictionary)). By every stretch of the imagination, a label or tag is not for sale, nor are labels and tags available as standalone items for purchase. Presumably, Lululemon's products are not quantified or separated in terms of their labels and tags. Think of it this way: If a customer asks a Lululemon employee for an alternative shirt, she is likely looking for a different color or size, not a different label or tag. "Stated differently, the goods and services referred to in the statute are simply those that the business normally offers." *Banana Republic LLC*, 2020 WL 1950496, at 6 (citations omitted) (cleaned up).

*Second,* digital labels are not considered, nor qualify as, "special goods." Typically, at least in the retail context, such goods might be "special sizes…of clothing," as one example. 28 C.F.R. § 36.307 (c); *accord* Department of Justice, *Technical Assistance Manual on the American With Disabilities Act* § III 4.3300 (1993) (examples of permissible auxiliary aids). But Plaintiff is not requesting any special size or piece of clothing. She simply would like product information to be "provided in [an] accessible format[]" as the law expressly demands. 28 C.F.R. § 36.303. Obviously, there is no special size of clothing unique to blind individuals.

*Third,* Lululemon tries to liken a digital tag and a Braille writing as one in the same for the proposition that both are treated (and thus sold) as "goods." The analogy proves far too much.

Across the board, Braille writing and digital tags do not have much in common.[4] A customer may purchase a gift card; she may not do the same with a label or tag. *See Banana*

---

[4] The two have nothing in common. Lululemon draws on a string of recent ADA challenges by plaintiffs who unpersuasively argued that retailers must provide their gift cards in Braille. *See, e.g., Banana Republic* LLC, 2020 WL 1950496, at 11 n.7 ("Using ADA-mandated size and spacing, the industry-standard gift card could only fit between 11 and 14 Braille characters, horizontally, and 5 lines, vertically. Thus, a card could hold, at most, 55 to 70

*Republic, LLC*, 2020 WL 1950496, at *6 ("a retailer sells gift cards to consumers the same way that they sell any other product in its stores"). Even practically speaking, the information on a tag—such as washing instructions—would be impossible to produce in Braille. After all, "Braille is big. It takes 10 volumes of Braille, for example, to publish Harry Potter and the Goblet of Fire. Printing Webster's Unabridged Dictionary requires 72 volumes." *Id.* at 11 n.7 (cleaned up). Lululemon did not mention (or grapple) with any of these basic features.

In fact, many companies are currently including QR codes in their operating manuals and instruction manuals. As an added example, take a look at the Binax home Covid test kit – the instructions have a QR Code on them.



All things considered, [a] plain reading of [the statutory] text requires a place of public accommodation such as [Lululemon]…to modify its 'policies, practices or procedures' so that its

---

Braille character"); *accord Mendez v. Outback Steakhouse of Fla., LLC*, 2020 WL 4273820, at *3 (S.D.N.Y. July 23, 2020) (collecting cases)

goods and services are available to disabled persons. The text does not require the entity to modify the goods or services it provides." *Dominguez v. Taco Bell Corp.,* 2020 WL 3263258, at *4 (S.D.N.Y. June 17, 2020) (cleaned up)); *see also Banana Republic LLC*, 2020 WL 1950496, at *6 ("words will be interpreted as taking their ordinary, contemporary, common meaning").

### B. **Lululemon Employees Are Not Automatically Considered "Qualified Readers" Per Se.**

Lululemon erroneously tries to analogize its own employees to "qualified readers," which would obviate the need for any other auxiliary aid to ensure effective communication. MTD at 5. Lululemon does NOT argue that its employees were ready, willing, and able to help Plaintiff; instead, they shift the burden to the blind woman, arguing that "[Plaintiff failed] to take advantage of the auxiliary aid or service available." MTD pg. 5. Preliminarily, it bears mentioning that this theory implicitly concedes Plaintiff requires an auxiliary aid for effective communication. Lululemon only protests the *type* of auxiliary aid on the view that its own employees can do the job. Either way, notwithstanding, if an item has a digital label, *ab initio,* blind customers do not even need to rely on any auxiliary aid. If digital labels entirely replace labels and tags, as the AAFA is asking Congress to do, both blind and non-blind customers will use and access them equally. Lululemon can start now by adding digital labels and tags.

Nonetheless, the ADA explains that Lululemon "shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). In assessing the given auxiliary aid, courts must consider "the nature, length and complexity of the communication" involved. *Id.* Further, in defining auxiliary aids, the statutory text is broad: "qualified readers, taped texts, or other effective methods of making visually delivered materials available to individuals with visual impairments," as well as "modification of equipment or devices" and "other similar services and

12

actions." 42 U.S.C. § 12103(1)(B)–(D); *see also* 28 C.F.R. § 36.303(b)(2) and (c) (listing the same along with "accessible electronic and information technology" and others).

In the face of all of this, Lululemon broadly complains that "there were employees in stores to verbally answer questions," as the *Camarillo* similarly situated plaintiffs argued <u>without</u> much success. 518 F.3d at 157 (citation omitted); *see also Panarra v. HTC Corp.*, 598 F.Supp.3d 73, 81 (W.D.N.Y., 2022).

This Court should reject that line of reasoning as the court did there. *Id.* at 157–58. At this stage, as *Camarillo* instructs, the Court is bound by Plaintiff's factual allegations (including taking any inference in her favor) that she was unable to receive any assistance from Lululemon employees. *Id.* Lululemon's narrative cannot do the trick. *See id.* ("Rather, a reasonable inference to be drawn from her complaint is that defendants failed to adopt policies or procedures to effectively train their employees how to deal with disabled individuals. Such a failure to train can constitute a violation of the ADA…"). Lululemon's products are very popular and its stores are often very crowded with shoppers. Salespersons are often not available.

Equally important, whether an auxiliary aid is appropriate is a fact-intensive inquiry that cannot be resolved in early stages of litigation. If anything, "the fact intensive nature of the inquiry strongly weighs against granting a motion to dismiss…" *Luckey v. St. Luke's Cornwall Hosp.*, 2021 WL 4124840, at *5 (S.D.N.Y. Sept. 9, 2021). This fact-heavy discussion can even preclude summary judgment. *See, e.g., Einsohn v. New York City Dep't of Educ.*, 2022 WL 955110, at *5 (E.D.N.Y. Mar. 30, 2022) (denying summary judgment in ADA context, citing "genuine disputes about whether that proposed accommodation posed an "undue hardship" to defendants," among other things).

    C.  **<u>Lululemon Cannot Belatedly Press Claims Related to Undue Burden or Significant Alteration.</u>**

It should be noted that Lululemon does not argue, as it cannot, that digital labels (like a QR code) would result in an "undue burden" or "fundamental alteration" under the ADA.

The reality is that QR codes are neither burdensome nor time consuming, considering that QR generator software is universally available. One way or another, courts are not affected by whether the ultimate remedy granted will be too onerous, which is no different here. *Dunston v. Spice of India*, 2022 WL 994502, at *6 (E.D.N.Y. Feb. 14, 2022) (issuing an injunction and ordering defendant "to prepare architectural plans remedying violations" in the ADA context).

### D. **Plaintiff's Home Has a Nexus to Lululemon Stores With Regard to Labels and Tags**

Defendant does not even attempt to counter Plaintiff's argument that her home has a nexus to Lululemon Stores with regard to the labels and tags *See* Compl. At ¶ 40. Plaintiff has explained that, even once she leaves the store where, under Defendant's presumptive argument, a salesperson assisted her in accessing the content of the labels and tags, she can no longer access the labels and tags since they are not in digital format. This causes her to not know how to care and wash the garments purchased at Lululemon stores. Is it in hot or cold water? Does it need to be dry cleaned? It is hard to imagine that accessibility to Lululemon's products ends at the store's door. Lululemon's products have a continuous nexus to the Lululemon store in this specific instance. Unlike a ramp for a wheelchair, important and legally mandatory information that is provided by Lululemon on the items that it sells should be available at the Lululemon store and continuously available afterward.

### E. **Lululemon's Fallback Declaratory-Relief Argument Fails**

As a fallback, Lululemon's last argument essentially goes like this: Plaintiff's cause of action for declaratory relief must be dismissed as that is a "'remedy, not a cause of action.'" MTD at 7. The Court should reject the Hail Mary.

To begin with, Lululemon proffers one case—*Chiste v. Hotels.com L.P.*—to support its cause. 756 F.Supp.2d 382 (S.D.N.Y. 2010). A private lawsuit against online travel companies, *Chiste* is neither relevant nor controlling: It related to claims of false and misleading business practices relating to the overcharging of consumers when using defendants' websites pursuant to New York General Business Law ("GBL") § 349. *Chiste* briefly addressed whether the Plaintiffs can pursue a Section GLB § 349. In the end, the court gave a mixed response, allowing some plaintiffs to proceed with a Section GLB § 349 and denying others from doing the same and concluding that "[n]one of the Plaintiffs, except for [one], has pleaded a viable G.B.L. § 349 claim." *Id* at 407. The case at hand is an ADA case and one cannot compare the pleading requirements of a case alleging deceptive business practices with discrimination against the blind.

On top of that, because of the Declaratory Judgment Act, "upon the filing of an appropriate pleading, [a court] may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *Volman v. Peri Peri 2 LLC et al.,* No. 21-cv-4449 (RPK), slip op. at 11–12 (E.D.N.Y. Aug. 16, 2022) (declaratory relief in the ADA context), *report and recommendation adopted* (Aug. 31, 2022) (cleaned up); *see also* 28 U.S.C. § 2201(a). Taken together, a declaratory judgment is appropriate when, as here, "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Duane*

15

*Reade, Inc. v. St. Paul Fire & Marine Ins. Co.,* 411 F.3d 384, 388 (2d Cir. 2005) (quotation marks omitted). Thus, Defendant's argument is deficient and cannot stand.

### III. PLAINTIFF'S STATE AND CITY CLAIMS SURVIVE AS WELL

For the reasons discussed above, Defendant's attacks on Plaintiff's New York State and New York City claims should also fail. Defendant asserts that the Court must likewise dismiss those claims because Plaintiff lacks standing or a valid federal claim. MTD at 6. However, as demonstrated *supra*, Defendant has not demonstrated sufficient grounds upon which to obtain dismissal of the ADA claim at issue in this action under 12(b)(6). *See Bullard v. Drug Policy All.*, 18 Civ. 8081 (KPF), 2019 U.S. Dist. LEXIS 222854, at *23-*24 (S.D.N.Y. Dec. 30, 2019 ("[a] court shall exercise supplemental jurisdiction if a supplemental claim is related to the claim within the court's original jurisdiction such that they form the same case or controversy." (*citing* 28 U.S.C. §1367(a)).

Accordingly, Defendant's request to obtain dismissal of the New York State and New York City claim should likewise be denied.

### CONCLUSION

For the foregoing reasons, the Court should deny the Motion and order such other and further relief as may be appropriate or necessary in favor of Plaintiff.

Dated: May 19, 2023

                                                            Respectfully Submitted,

                                                            */s/Dan Shaked*
                                                            Dan Shaked, Esq.
                                                            Shaked Law Group, P.C.
                                                            14 Harwood Court, Suite 415
                                                            Scarsdale, New York 10583
                                                            Tel.  (917) 373-9128
                                                            E-mail:  ShakedLawGroup@gmail.com
                                                            *Attorney for Plaintiff*