```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
PARADISE MORGAN,                                            :
                                                            :
                                  Plaintiff,                :
                                                            :    23-CV-434 (VSB)
               - against -                                  :
                                                            :    OPINION & ORDER
                                                            :
LULULEMON ATHLETICA INC.,                                   :
                                                            :
                                  Defendant.                :
                                                            :
------------------------------------------------------------X
```

Appearances:

Dan Shaked
Shaked Law Group, P.C.
Scarsdale, NY
*Counsel for Plaintiff*

Katharine J. Liao
Squire Patton Boggs (US) LLP
New York, NY

Lauren Herz-DerKrikorian, Esq.
Squire Patton Boggs (US) LLP
New York, NY
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

      Before me is Defendant Lululemon Athletica Inc.'s ("Defendant" or "Lululemon") motion to dismiss Plaintiff Paradise Morgan's ("Plaintiff") complaint. Plaintiff claims that Defendant failed to reasonably accommodate her disability by not printing QR codes on tags and labels at its stores and not providing adequate auxiliary aids, in violation of Title III of the Americans with Disabilities Act ("ADA" or "Title III of the ADA"), 42 U.S.C. § 12181 *et seq.*;

the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 292 *et seq.*; the New York State Civil Rights Law ("NYSCRL"), CLS Civ. R. § 40 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-102 *et seq.* Plaintiff seeks injunctive and declaratory relief as well as damages, including attorneys' fees. Before me is Defendant's motion to dismiss for failure to state a claim. Because Plaintiff fails to state an ADA cause of action, and the law does not recognize standalone causes of action for declaratory relief, Defendant's motion to dismiss Plaintiff's ADA cause of action is GRANTED. I also decline to exercise supplemental jurisdiction; therefore, the NYSHRL, NYSCRL, and NYCHRL causes of action are dismissed.

## I.  Background and Procedural History[1]

Plaintiff is a visually-impaired and legally blind resident of New York County who requires use of her smartphone to access QR codes for information about merchandise. (Compl. ¶¶ 2, 18.) Defendant is a corporation incorporated in Delaware, with its principal place of business in Vancouver, Canada, and is an apparel brand with over 600 stores across the country. (*Id.* ¶¶ 6, 21.) Plaintiff regularly visited stores owned by Defendant in Manhattan. Specifically, Plaintiff visited Defendant's stores located at 3rd Avenue and 86th Street and in Soho on Broadway, in Manhattan. (*Id.* ¶¶ 5, 11, 43.) She claims that Defendant fails to provide digital labels and tags as an accommodation for "blind and visually-impaired customers" so that they could "make an informed decision" about Defendant's products. (*Id.* ¶ 6.) Therefore, according

---

[1] This factual background is derived from the allegations in Plaintiff's complaint. (Doc. 1 ("Compl." or "Complaint").) I assume the allegations set forth in the Complaint to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). However, my references to these allegations should not be construed as a finding as to their veracity, and I make no such findings in this Opinion & Order.

2

to Plaintiff, "Defendant's store[s] [are] not equally accessible to blind and visually-impaired consumers" and so they "violate[] the ADA." (*Id.* ¶ 12.)

Plaintiff filed her Complaint on January 18, 2023. (Compl.) The Complaint contains claims for violations of Title III of the ADA, (*Id.* ¶¶ 58–73), NYSHRL Article 15, (*Id.* ¶¶ 74–88), NYSCRL Article 4, (*Id.* ¶¶ 89–101), the NYCHRL, (*Id.* ¶¶ 102–13), and Declaratory Relief, (*Id.* ¶¶ 114-16). Defendant moved to dismiss on May 5, 2023, (Doc. 10), and filed an accompanying memorandum of law on the same date, (Doc. 11). Plaintiff filed her opposition on May 19, 2023, (Doc. 12), along with an accompanying memorandum of law, (Doc. 13). Defendant filed its reply memorandum of law on May 26, 2023. (Doc. 16.)

## II. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237. "A complaint is deemed to include any written instrument attached to

3

it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotation marks omitted).  A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Finally, although all allegations contained in a complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

### III.   Discussion

#### A.   *ADA Claims*

Because Title III of the ADA does not require Defendant to modify its inventory to include QR codes or digital tags and labels and does not require Defendant to provide such items as auxiliary aids, Plaintiff fails to state a claim that Defendant violated Title III of the ADA. Therefore, Defendant's motion to dismiss is GRANTED as to Plaintiff's first cause of action.

##### 1. The ADA Does Not Require Defendant to Modify its Inventory by Printing QR Codes on its Labels and Tags

Title III of the ADA requires that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).  To make out a cause of action for violation of Title III of the ADA under the law in the Second Circuit, Plaintiff must demonstrate:  "(1) that she is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against her by denying her a full and equal opportunity to enjoy the services defendants provide." *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008).  The parties do not dispute that Plaintiff properly pleads the first two elements.  (Doc. 13 at 7; Doc. 16 at 3–

4). However, with regard to the third element, the parties dispute whether Plaintiff adequately pleads that Defendant "discriminated against her by denying her a full and equal opportunity to enjoy" its products. *See Camarillo*, 518 F.3d at 156. Because Plaintiff fails to meet her burden to plead that she was discriminated against, Defendant's motion must be granted and Plaintiff's first cause of action must be dismissed.[2]

The caselaw distinguishes between denial of "full and equal enjoyment" of the services provided by a place of a public accommodation to persons covered under the ADA and requests by plaintiffs suing under Title III of the ADA to "alter" the "inventory" of defendants. *See Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999) ("[A] store is not required to alter its inventory in order to stock goods such as Braille books that are especially designed for disabled people.") Courts have recognized that an entity's failure to alter its inventory is outside the coverage of Title III of the ADA.[3] *See, e.g.*, *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1115 (9th Cir. 2000) (Title III of the ADA does not "require provision of different goods or services, just nondiscriminatory enjoyment of those that are provided."); *McNeil v. Time Ins. Co.*, 205 F.3d 179, 186 (5th Cir. 2000) ("[A] business is not required to alter or modify the goods or services it offers to satisfy Title III"); *Lenox v. Healthwise of Kentucky, Ltd.*, 149 F.3d 453, 457 (6th Cir. 1998) ("The purpose of the ADA's public accommodations

---

[2] As an initial matter, I address a factual dispute between the parties. Plaintiff alleges that Defendant's "QR Codes are currently only for internal inventory purposes." (Compl. ¶ 42.) Defendant argues that this allegation is false and that Plaintiff's claims must be dismissed because "lululemon does in fact have accessible QR codes on its merchandise tags and labels which provide the information Plaintiff seeks – merchandise details and care instructions." (Doc. 11 at 2.) I must assume the allegations set forth in the Complaint to be true for purposes of this motion to dismiss. *See Kassner*, 496 F.3d at 237. Therefore, this factual dispute is not properly before me on this motion to dismiss. *See Noriega v. Abbott Lab'ys,* 714 F. Supp. 3d 453, 460 (S.D.N.Y. 2024) (disputes of "clinical proof" that are "fairly put issue by the Complaint [] cannot be resolved on a motion to dismiss."). Therefore, I need not address the sufficiency of the anecdotal evidence referenced for the first time in Plaintiff's opposition brief, (Doc. 13 at 7–8), or the propriety of the introduction of such evidence, (*see* Doc. 16 at 4 n.2.)

[3] This limiting principle is also outlined in the statute's implementing regulations. *See* 28 C.F.R. § 36.307(a) ("This part does not require a public accommodation to alter its inventory to include accessible or special goods that are designed for, or facilitate use by, individuals with disabilities.").

5

requirements is to ensure accessibility to the goods offered by a public accommodation, not to alter the nature or mix of goods that the public accommodation has typically provided." (quoting *Parker v. Metropolitan Life Ins. Co.*, 121 F.3d 1006, 1012 (6th Cir. 1997) (en banc), *cert. denied*, 522 U.S. 1084 (1998)).

Plaintiff argues that "labels and tags do not make up" part of Defendant's "goods and thus inventory," (Doc. 13 at 9) (international quotation marks omitted), because the "label or tag is not for sale" in and of itself as a "standalone item for purchase" and so they are not part of the Defendant's inventory, (*id*. at 10). However, this argument misses the point. Tags and labels, much like single items in boxsets or packaging containing a product, may well be unavailable as "standalone item[s] for purchase," but they remain part of a retailer's goods and inventory.

Plaintiff presents a strained argument in an attempt to distinguish QR coding and QR code tags from Braille, arguing that the voluminousness and unwieldiness of Braille translations presents a material difference in the analysis. (Doc. 13 at 10–11.) Here, Plaintiff misconstrues the caselaw on the modification and/or alteration of products. Courts have consistently held that Title III of the ADA does not require the provision of Braille books to blind patrons. *See, e.g.*, *Weyer*, 198 F.3d at 1115 ("[A] bookstore cannot discriminate against disabled people in granting access, but need not assure that the books are available in Braille as well as print."). However, contrary to Plaintiff's argument, the reason Title III of the ADA does not require retailers to provide Braille books is not because Braille would make the books cumbersome, unwieldy, or heavy. Instead, it is because the provision of Braille exemplifies a distinction between "the mix of goods and services offered," by a public accommodation, and the "ability [for a plaintiff] to avail herself of the goods and services offered" by the public accommodation. *Lenox*, 149 F.3d at 457. *Lenox* is instructive. The Court in *Lenox* used requiring a video store "to stock closed

6

caption video tapes" for "a deaf person," as an example of improperly requesting a change in "the mix of goods and services offered." *Id.* This too may have been less cumbersome for a purveyor than the provision of books in Braille, but it does not change that it was still an alteration. The fact that the alteration sought here may differ in degree of burden from the provision of books in Braille cannot divert from the conclusion that it is, at bottom, still an alteration, and, therefore, not required under Title III of the ADA.

      The cases that Plaintiff cites discussing the purported definition of goods are inapposite. *Dastar Corp v. Twentieth Century Fox Film Corp.* considered whether a "trademark owner" could be considered the "origin of goods" in a trademark suit, not goods in the context of the ADA. 539 U.S. 23, 32 (2003). In *Thorne v. Boston Mkt. Corp.*, also cited by Plaintiff, a case involving Title III of the ADA, the Court found that gift cards were, in fact, considered goods or merchandise, rebutting an analogous argument to that made by the Plaintiff here. 469 F. Supp. 3d 130, 142 (S.D.N.Y. 2020) ("As an initial matter, the Court disagrees with Plaintiff's contention that gift cards are not goods and that he is not demanding specialized goods to be inventoried, nor is he seeking Defendant to alter its current gift cards." (internal quotation marks omitted)).

      The fact remains that the printing of a QR code on the label or tag of the goods provided or sold by Defendant is an alteration or modification of such products and so cannot be required by Title III of the ADA. *Bunting v. Gap, Inc.*, 714 F. Supp. 3d 152, 156 (E.D.N.Y. 2024) ("By seeking a change to the products' labels, plaintiff is seeking to have the [defendant] alter or modify the goods or services it offers." (internal quotation marks omitted)). Therefore, failure to offer products that include QR codes or digitally scannable tags or labels cannot be considered a violation of Title III of the ADA. *See Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 84 (2d Cir.

7

2022) (Lohier, J., concurring) ("Title III of the ADA prohibits a place of public accommodation from discriminating on the basis of disability when providing *access* to its goods and services, but not to regulate what *types* of goods and services should be made available." (emphasis in original)).

*Bunting* is instructive. In *Bunting*, filed by the same attorneys that represent Plaintiff in this case, the Court addressed nearly identical claims to those at issue here. Plaintiff was a "legally blind" individual bringing suit against The Gap, Inc. ("Gap"). 714 F. Supp. 3d at 154. The Count found that "product labels are 'attached to,' 'intertwined with' and part of Gap's merchandise," and held that "the ADA does not require Gap to alter its inventory to include products with digital labels," so plaintiff's "theory of liability fail[ed] as a matter of law." *Id.* at 156. I find that the analysis and logic applied by the Court in *Bunting* apply with equal force here, and Plaintiff fails to plead any facts or raise any issue of contrary law that would persuade me to depart from the holding in *Bunting*.

I decline to stretch interpretation of the provisions of Title III of the ADA to cover the claim asserted by Plaintiff. Although the QR code technology may well be a revolutionary low-cost technology, (*see* Doc. 13 at 4), that will, in time, become widely adopted across the retail clothing industry, Title III of the ADA does not require Lululemon to change its products to incorporate this feature.[4]

---

[4] As Plaintiff points out in her opposition brief, Lululemon is part of a trade association petitioning the government regarding certain kinds of digital labelling. (Doc. 13 at 5.) Should Congress wish to pass a law mandating the use of digital labels or should the relevant agencies wish to promulgate an analogous regulation, they may do so. Indeed, the lobbying effort itself could be seen as acknowledgment by the industry that Title III of the ADA does not mandate digital labelling. In any event, I do not consider Plaintiff's assertions with regard to the purported lobbying efforts of the trade association to be persuasive.

8

## 2. Plaintiff Fails to Plead that Defendant Denied Her Appropriate Auxiliary Aids to Accommodate her Disability

Plaintiff also alleges that Defendant failed to provide "appropriate auxiliary aids" to effectively accommodate Plaintiff's disability. (Doc. 13 at 12–13.) In her Complaint, Plaintiff pleaded that on two instances she visited Lululemon store locations and "did not receive any assistance from any sales persons or other staff members." (Compl. ¶ 43.) Therefore, she claims, (*see* Doc. 13 at 13), that *Camarillo v. Carrols Corp.* controls. *See* 518 F.3d at 156 (ADA may require owners of public accommodations to "furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities."). *Camarillo* is distinguishable from the facts at issue here. In *Camarillo*, plaintiff alleged that she had "been made fun of, stared at, and forced to wait until other customers behind her in line were served, and the employees have often read her only part of the menus." *Id*. at 154. In other words, she was "discriminated against on the basis of [her] disability," because she was "treated differently than other individuals," with employees at the public accommodations berating her and failing to aid her with the provision of equal service. 42 U.S.C. § 12182(a)–(b).

Here, Plaintiff pleads no such conduct. There are no factual allegations concerning the amount of time Plaintiff was in the brick and mortar Lululemon store locations at issue or that she sought assistance from a Lululemon employee, much less that the Lululemon employees treated her differently by failing to properly aid her when she asked for help. (*See* Compl. *passim*.). Plaintiff can do no better than a passing reference to the Defendant's stores being "very popular" and "often very crowded with shoppers." (Doc. 13 at 13). These are not well-pleaded allegations that Plaintiff was discriminated against, much less, as in *Camarillo*, a well-pleaded claim that "on numerous occasions, employees" were "unwilling to communicate

9

effectively the range of options available to her." *Camarillo*, 518 F.3d at 157. Therefore, *Camarillo* does not apply here, and Plaintiff's reference to it is unpersuasive.

Plaintiff's failure to plead an allegation that she sought assistance or auxiliary aid from Defendant's employees means that she cannot have been discriminated against and ends the inquiry. *Bunting*, 714 F. Supp. 3d at 157 (granting motion to dismiss analogous claim when "plaintiff fail[ed] to allege that she ever sought assistance or requested other auxiliary aids or services from Gap employees"). The failure of Defendant's employees to engage with Plaintiff, without more, does not support a claim that Defendant failed to provide adequate auxiliary aids.

Absent well-pleaded allegations that Plaintiff informed Defendant's employees of her condition and failed to receive adequate auxiliary aids, Plaintiff cannot show that Defendant failed to offer such services. *Calcano v. True Religion Apparel, Inc.*, No. 19-CV-10442, 2022 WL 973732, at *7 (S.D.N.Y. Mar. 31, 2022) (dismissing claims where "Plaintiff does not even allege that he informed [the defendant's] employee of his disability, thus failing to put [the defendant] on notice that Plaintiff might require an alternative auxiliary aid"). In fact, Plaintiff's argument that Defendant failed to provide Plaintiff with sufficient auxiliary aids consists of little more than rehashing the argument that Lululemon should be compelled to modify its product tags by appending digital QR codes to its products. (*See* Doc. 13 at 12) ("[I]f an item has a digital label, *ab initio*, blind customers do not even need to rely on any auxiliary aid."). Trying to bootstrap such an argument in through the auxiliary aid caselaw cannot save Plaintiff's claims.

Next, Plaintiff argues that the implementation of a QR code would not "result in an undue burden," or "be too onerous," and cites *Dunston v. Spice of India Inc.*, No. 20-CV-493, 2022 WL 994502, at *6 (E.D.N.Y. Feb. 14, 2022), in support of the claim that this is legally relevant. (*See* Doc. 13 at 13–14.) But the dicta she cites does not involve a substantive interpretation of the

10

ADA; rather it relates to an injunction request following a liability determination after a default judgment. *See Dunston*, 2022 WL 994502, at *6 ("Plaintiff's allegations, which are assumed to be true due to Defendants' default, establish Defendants' liability pursuant to 42 U.S.C. § 12182(b)(2)(A)(iv)."). Such a citation is not persuasive or relevant to the present legal question, which is of liability, not of remedy. Again, Plaintiff muddies the waters between making argument about auxiliary aids, which she cannot show she was improperly denied access to, *see supra* at 9–10, and requesting modifications to Defendant's inventory, which are precluded from the ambit of Title III of the ADA, regardless of the burden imposed by the requested alteration, *see supra* at 6–8.

Finally, Plaintiff's allusions in her Complaint to the absence of care instructions following purchase are unavailing. (Compl. ¶¶ 40–42.) Plaintiff's corresponding Section II.D of her brief, titled "Plaintiff's Home Has a Nexus to Lululemon Stores With Regard to Labels and Tags," is bereft of caselaw citations or persuasiveness. (Doc. 13 at 14.) What is required of Defendant here, as the owner of a place of a public accommodation, is to provide "qualified readers" "or other effective methods of making visually delivered materials available to individuals with visual impairments." 42 U.S.C. § 12103(1)(B). Title III of the ADA does not require places of public accommodation to supply auxiliary aids for use in the home after purchase and therefore does not mandate the inclusion of such care instructions. *Bunting*, 714 F. Supp. 3d at 157 ("Plaintiff cannot resuscitate her auxiliary-aid claim by arguing that employee assistance in reading labels is categorically inadequate because plaintiff cannot benefit from that assistance *after she returns home*." (emphasis in original)). It may be that, in an ideal world, "information that is provided by Lululemon on the items that it sells should be available at the Lululemon store and continuously available afterward," (Doc. 13 at 14), but nowhere does

11

Plaintiff demonstrate that Title III of the ADA requires such a modification. Again, Plaintiff returns to previously rejected claims about the provision of QR codes. Caselaw squarely precludes mandating such a modification to Defendant's previously existing inventory.

### B. *State and City Law Claims*

Having dismissed Plaintiff's sole federal claim, the only claim over which I had original jurisdiction, I now consider whether to exercise supplemental jurisdiction over Plaintiff's remaining claims, which arise under the NYSHRL, the NYSCRL, and the NYCHRL. A district court "may decline to exercise supplemental jurisdiction over a claim" once it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). Whether to exercise supplemental jurisdiction "is within the sound discretion of the district court." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 117 (2d Cir. 2013) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349–50 (1988)). Courts "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity" to decide whether to exercise supplemental jurisdiction. *Id*. at 117–18 (internal quotation marks omitted). "Courts in this District routinely decline to exercise supplemental jurisdiction over a plaintiff's state law claims, including NYCHRL claims and common law torts, after dismissing all federal claims." *Braunstein v. Sahara Plaza, LLC*, No. 16-CV-8879, 2021 WL 2650369, at *19 (S.D.N.Y. June 28, 2021) (collecting cases).

Here, having dismissed Plaintiff's only federal claim, I decline to exercise supplemental jurisdiction over Plaintiff's NYSHRL, NYSCRL, and NYCHRL claims. *See Sookul v. Fresh Clean Threads, Inc.*, 754 F. Supp. 3d 395, 416 (S.D.N.Y. 2024) ("Having dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims under the NYSHRL, NYSCRL, and NYCHRL."). Permitting Plaintiff to pursue her

12

state-law claims in state court would "avoid needless decisions of state law by this Court, which also promotes the interests of comity and justice." *Moran v. Tryax Realty Mgmt, Inc.*, No. 15-CV-8570, 2016 WL 3023326, at *4 (S.D.N.Y. May 23, 2016) (internal quotation marks omitted). Ordinarily, pursuant to 28 U.S.C. 1367(c), when "a plaintiff's federal claims are dismissed before trial, 'the state claims should be dismissed as well.'" *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010) (quoting *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008)). Plaintiff's state-law claims are, therefore, dismissed. Accordingly, Defendant's motion to dismiss is GRANTED as to Plaintiff's Second, Third, and Fourth causes of action.

        **C.**     ***Declaratory Relief***

Declaratory relief is not an independent cause of action. *Knox v. Ironshore Indem. Inc.*, No. 20-CV-4401, 2021 WL 256948, at *4 (S.D.N.Y. Jan. 26, 2021) ("The Declaratory Judgment Act is 'procedural only and does not create an independent cause of action.'" (quoting *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244–45 (2d Cir. 2012))). Accordingly, Defendant's motion to dismiss is GRANTED as to Plaintiff's fifth cause of action.

## IV. <u>**Conclusion**</u>

For the reasons stated above, Defendant's May 5, 2023 motion to dismiss is GRANTED.

The Clerk of Court shall enter judgment for Defendant and close the case.

SO ORDERED.

Dated: November 18, 2025
      New York, New York

                                                   _____
                                                   Vernon S. Broderick
                                                   United States District Judge